## Appeal of Thomas P. Lambert Post No. 2540, V. F. W.

*George T. Robinson*, for appellant.

*Peter B. Jurchak*, for appellee.

SHULL, P. J., December 30, 1943.—This appeal is from the refusal of the Liquor Control Board of Pennsylvania to grant to Thomas P. Lambert Post No. 2540, Veterans of Foreign Wars of the United States, 2 Storm Street, Stroudsburg, Monroe County, Pa., a club liquor license.

By reason of a stipulation entered into by counsel representing appellant and counsel representing the Liquor Control Board in this appeal, there is in this case but one issue, that being whether, by reason of the Liquor License Quota Act of June 24, 1939, P. L. 806, sec. 2, a license may be granted to this applicant.

The Liquor License Quota Act of 1939, sec. 2, provides:

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of licenses granted to hotels, as defined in this act, and clubs; but at least one such license may be granted in each municipality, except in municipalities where the electors have voted against the granting of any retail licenses. Nothing contained in this section shall be construed as denying the right to the Pennsylvania Liquor Control Board to renew or to transfer existing retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed; but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded."

When this act is coupled with the existing liquor laws, which it supplements, and all are carefully read, our first reaction is that whoever prepared this section must have prepared it with a hay fork, for with it the situation is as thoroughly mixed up as is a jag of hay after it has been pitched from the ground into a half-loaded hay wagon and, as a consequence, it is indeed difficult to tell "which end from t'other".

It is our view that, while some State might have more impracticable liquor laws than those we have in this Commonwealth, we cannot quite picture that this is at all probable. Let us look at the provisions of our liquor laws for a moment and we find that, under them, if one acquired the right of possession of an abandoned chicken coop of reasonably good size, placed in it a few chairs, tables, dishes, an old refrigerator, a cook stove, and bought himself a white apron and a chef's cap, up to the time of the passage of the act we have under consideration he could have applied for, and beyond question would have gotten, a license to sell liquor, etc. Having been granted this license, he is required to buy his liquor at a State-operated store, which fails, neglects, or refuses to stock many of the really good brands of wines and liquors, and patrons of such retail licensee must drink the brands of liquor, if he can get any at all, chosen for him by the Liquor Control Board, or else. . . . Should a citizen of the Commonwealth want a bottle of liquor of a brand not carried by the State store, he enjoys the privilege of ordering *an entire case* of that liquor, paying for it in advance, and then waiting for a period of weeks, or months perhaps, to get the case of liquor — but he thereby continues to be a law-abiding citizen. But, should he not desire a case of liquor and should he not desire to wait, then his alternative is to go to a neighboring State, buy a bottle, bring it into his home, and thereby become an outlaw.

In carrying on the wholesale liquor business under this act the Commonwealth of Pennsylvania became the largest buyer of liquor in the world, but a large part of Pennsylvania's immense population either drank liquor of brands they didn't like or want, bought it by the case instead of by the bottle, or violated the law and bought the liquor they did want in another State where they could buy it by the bottle. This is one way our citizens are affected by the liquor laws now in force in this Commonwealth. Another way Pennsylvania has been affected by them is a raging flood of licenses to sell liquor wished upon every community which does not vote dry, the number of licenses issued being far above and beyond any possibility of necessity for a full measure of service to even the thirstiest of publics. It is our view that there are now in force in Pennsylvania a sufficient number of licenses amply to serve all public demands, without crowding, even if every man, woman, and child in the Commonwealth became an habitual drunkard.

The retail sale of liquor is a legalized business in this Commonwealth and is conducted by individuals under licenses granted by our Liquor Control Board. The wholesale liquor business is in the hands of the State and the officers of the Liquor Control Board brag long and loud of the amount of profit it makes through the State sale of liquor—and the citizens "cuss" the inefficiency of the Liquor Control Board and the resulting inconvenience and annoyance to which the public is subjected. It is our view that government operation of any business, except government, in the end can only lead to disaster, whether it be the county, the State, or the National Government that undertakes the operation of any commercial enterprise. It is our firm conviction that the net result of government operation of any business is always inefficiency, waste, and public inconvenience and, as in this particular case, though there be profits in the till, in our judgment this benefit

is more than overbalanced by the inconvenience and annoyance suffered by the taxpaying public by reason of the operation of the wholesale liquor business by this Commonwealth.

But we have digressed from the question immediately before us. We are confronted with the question whether the Veterans of Foreign Wars in Stroudsburg should be denied a license by reason of the Liquor License Quota Act of 1939.

If licenses are to be granted at all, and particularly if any organization is entitled to enjoy the privilege of a license to furnish liquor to its own members in their club home, then the members of this organization, being, as they are, men who have in the past served their turn in the armed forces in the defense of our country in time of war and in time of the country's need, who since their return from the armed services have taken their places in the civilian life of our community, all of them good American citizens, most of them useful citizens of our community life, and some of them most outstanding in our civic activities, contributing much to the progress, security, and prosperity of this community, they having bought a very substantial and commodious home for their post, should be accorded that privilege. This being true, there is, as we have said, only to consider whether, by reason of the Quota Act of 1939, they are denied the privilege of having that license.

In considering this, the first question we ask ourselves is, "Why are the words 'and clubs' coupled with the words 'exclusive of licenses granted to hotels' in the first sentence of section 2 of the act?" Very definitely this places both hotels and clubs outside of the classes of licenses to be limited by the act. We cannot picture any other construction of this sentence of the act. That being true, can the second sentence, which is not the affirmative part of the legislation, reasonably be given an interpretation which drags club licenses back under the operation of the first sentence? Up to the point of

the second sentence in this paragraph, legislative intent to place a limitation or quota only on restaurant and eating-house licenses is perfectly clear on the face of the act. Then follow words of explanation and reservation of powers to the Liquor Control Board relative to existing retail licenses, reserving the right to the board to transfer existing retail licenses of the classes issued under the law, specifically mentioning the right to continue to issue new licenses to hotels. Throughout the entire act appears no intention to limit or establish a quota for hotel licenses, either on a basis of population or any other basis, nor does there appear in this act any expressed intention to limit or place a quota on club licenses on a basis of population or any other basis. If the last phrase of the second sentence of the act, which reads, "but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded", is to be construed to be a theoretical suspension (though, as we view it, it could only result in an eternal prohibition) of the issuing of new club licenses, then, clearly, the title to the act fails to disclose any such purpose, and, if the act be so construed, it is unconstitutional so far as club licenses are concerned.

Counsel for the Liquor Control Board urges upon us that the proper construction of this act is that no new club licenses may be granted so long as the number of licenses for the retail sale of liquor is in excess of one for each thousand of population. Considered from this angle, a superficial reading of the act might suggest this construction, but a careful reading of it with that thought in mind confronts the courts with a dilemma akin to the one which confronted the old lady who was baking a mince pie and an apple pie at the same baking and, being desirous of knowing before cutting the pies which she was serving, after she had tucked the top crust on the mince pie she took a knife and scratched on that crust the letters "T M", that to bear for her the

legend " 'Tis mince", and as she was tucking the top crust on the apple pie, being desirous of making assurance doubly sure, she took the knife and scratched on the top crust the letters "T M", that to bear for her the legend " 'Taint mince". In the act, in the first sentence, clubs are definitely excluded from its operation, and in the second section clubs are not mentioned.

Though, in our discussion, we refer to the suspension of club license privilege, the practical result of this act, should we construe it as our contemporaries do, would bring about, to the end of time, a total abolition of club license privilege so far as new clubs are concerned by reason of the fact that under our law so many licenses have been granted to so-called restaurants and eating places, even in this community, that the Biblical span of three score years and ten would not be nearly sufficient within which anyone could possibly witness the granting of a new club license. Under our liquor laws there have been bestowed upon this beautiful, prosperous, and happy community, of just six thousand, one hundred eighty-six souls, eating house or restaurant licenses to the number of sixteen. The Limitation or Quota Act of 1939 gives to each one of them a fictitious value and it is extremely unlikely that any one of them will be permitted to lapse. So far as we have been able to observe in our travels, all other communities within the Commonwealth have been treated with equal generosity in the matter of restaurant and eating house licenses and, if that be correct, what applies here would apply with equal force throughout the Commonwealth as to the perpetual abolition of the privilege of liquor licenses to clubs not now the possessors of such licenses. We cannot conceive such to have been the intention of the legislature.

In construing an act of assembly, "when the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit, but when the words of a law are not explicit, the intention of the legislature may be as-

certained by considering the occasion and necessity for the law, the mischief to be remedied, the object to be attained, and the consequences of a particular interpretation". Should we accept a highly technical construction of the words "retail sale of liquor", it perhaps could be said that there is no ambiguity in the words of the title to this act; but in the construction of a statute it becomes the duty of the court to give to the words used in the statute the ordinary and usual construction of them as related to the subject toward which they are directed. The legislature in the course of its liquor legislation has never treated the dispensing of liquor in a club, under a club license, as a retail sale of the same, nor has the legislature dealt with club licenses on the same plane that it deals with licenses issued for the retail dispensing or sale of liquor in a commercial way. By way of example, reference to paragraphs in the various liquor and beverage acts clearly discloses this. For instance, see section 2, subsec. (f), of the Beverage License Law of July 18, 1935, P. L. 1217, which provides:

" 'Retail Dispenser' means and includes persons licensed to engage in the retail sale of malt or brewed beverages for consumption on the premises of such licensee, with the privilege of selling malt or brewed beverages in quantities not in excess of seventy-two fluid ounces in a single sale to one person, to be carried from the premises by the purchaser thereof."

Section 12 of the Beverage License Law of May 3, 1933, P. L. 252, as amended by the Malt Liquor License Law of December 20, 1933, P. L. 75, sec. 1, the Beverage License Law of July 18, 1935, P. L. 1217, sec. 1, and the Beverage License Law of June 16, 1937, P. L. 1827, sec. 1, provides as follows:

"(a) Any retail dispenser may be granted licenses to maintain, operate or conduct any number of places for the sale of malt or brewed beverages, but a separate license must be secured for each place where malt or brewed beverages are sold. . . .

"(c) . . . A retail dispenser license shall not be issued to any individual unless such individual, for one year immediately preceding the date of his application, has been a resident of the county wherein his place of business is or is to be located."

Section 1 of the Act of February 26, 1855, P. L. 53, provides as follows:

". . . it shall not be lawful for any person or persons, to sell, trade or barter in any spirituous or malt liquors, wine or cider, on the first day of the week, commonly called Sunday; or for the keeper or keepers of any hotel, inn, tavern, ale house, beer house, or other public house or place, knowingly to allow or permit any spirituous or malt liquors, wine or cider, to be drank on or within the premises or house occupied or kept by such keeper or keepers, his, her or their agents or servants, on the said first day of the week."

The Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, sec. 305, as amended by the Act of July 18, 1935, P. L. 1246, and the Act of June 16, 1937, P. L. 1762, provides:

"Every Pennsylvania Liquor Store shall sell liquors at wholesale to hotels, restaurants, clubs, and railroad, pullman and steamship companies licensed under this act, and, under the regulations of the board, to pharmacists duly licensed and registered under the laws of the Commonwealth, and to manufacturing pharmacists, and to reputable hospitals approved by the board, or chemists. The board may sell to registered pharmacists only such liquors as conform to the Pharmacopoeia of the United States, the National Formulary or the American Homeopathic Pharmacopoeia. All other sales by such stores shall be at retail. No liquor shall be sold except for cash, except that the board may, by regulation, authorize the acceptance of checks for liquor sold at wholesale." And many other instances throughout the course of liquor legislation, recently and running back particularly to the time of the repeal of prohibition.

It is true that in the legislation you will find the words "retail dispenser". While in this act the words "retail sale of liquor" are used, still, as we view it, as applied to the liquor question, this is a distinction without a difference for no one would be foolish enough to assume that a retail dispenser was one who, Santa Claus-like, hands out liquor to those who might ask without pay for the same. And again, in the treatment of licenses, the sale of liquor is prohibited to retail dispensers on election day, on Sunday, and at other times, which prohibition does not apply to the dispensing of liquor under club licenses. This right to dispense liquor by clubs is fully recognized throughout the State. Though we are mindful of the fact that his Honor, Judge Gordon, in the case of In re Revocation of Club Liquor License, 82 Pitts. L. J. 226, held that a club was prohibited from dispensing liquor on Sunday, this decision has never been accepted as the law nor has any attempt made by the enforcement division of the Liquor Control Board to enforce it, nor has the decision been followed by courts throughout the State. There is a difference in the fee charged for licenses. Consequently, in the course of all of our liquor legislation, a club license has been placed in a class separate and distinct from licenses granted to retail dispensers engaged in the business for profit, and in determining whether or not this title clearly expresses the purpose of the legislation the meaning of the words "retail sale of liquor" to be applied by the court is the meaning that has been built up by the course of action of our legislature in dealing with the question and which is the accepted interpretation of those words by judges, lawyers, and laymen as applied to the liquor situation, and with such construction the title to this act does not only fail clearly to disclose a purpose to limit or abolish club licenses, but the act itself does not provide for their limitation or abolition. And again, in interpreting an act of assembly, when the words of the law are not explicit it is the duty of the court in interpreting it to

give·consideration to the occasion and necessity for the law, the mischief to be remedied, the object to be attained, *and the consequences of a particular interpretation*. If this act is interpreted to include club licenses in the general classification of those engaged in the retail sale of liquor, malt or brewed beverages, etc., then the enforcement of it will create an intolerable situation inasmuch as our liquor laws provide:

"No person who holds, either by appointment or election, any public office which involves the duty to enforce any of the penal laws of the United States of America, or any of the penal laws of the Commonwealth of Pennsylvania, or any penal ordinance or resolution of any municipal subdivision of this Commonwealth, shall be issued any manufacturer's, importing distributor's, distributor's or retail dispenser's license, nor shall such a person have any interest, directly or indirectly, in any such license": Beverage License Law of May 3, 1933, P. L. 252, sec. 12, as amended by the Beverage License Law of June 16, 1937, P. L. 1827, sec. 1.

It cannot be gainsaid that every member of a club has a direct interest in the liquor license issued to that club and, that being true, the provision that "no person who holds . . . any public office which involves the duty to enforce any of the penal laws . . . or any penal ordinance . . . shall be issued any . . . retail dispenser's license, nor shall such a person have any interest, directly or indirectly, in any such license" would make necessary an exodus of judges, district attorneys and sheriffs from the Union League, or detectives, policemen, magistrates, justices of the peace, and constables from Charley Grakelow's Elks, Puddler Jim's Moose, the Eagles, the Owls and the Orioles, etc., otherwise to be subject to prosecution under the penal provision of the Liquor Act. We cannot picture that the legislature intended any such consequences by this act.

While in this day and time one cannot be sure of the ultimate decision as to just what is prohibited by our

Constitution, still there are some things remaining which are unquestionably prohibited in legislative action, and it is very definitely our view that if this Act of Assembly of June 24, 1939, P. L. 806, bearing the following title:

"An act limiting the number of licenses for the retail sale of liquor, malt or brewed beverages, or malt and brewed beverages, to be issued by the Pennsylvania Liquor Control Board; defining hotels, and prescribing the accommodations required of hotels in certain municipalities"; must be construed to the end that it limits the number of club licenses to be granted in any given community, or that it abolishes club licenses other than those now in force, it is unconstitutional. The title to this act not only fails clearly to express such intent, but the act itself fails to establish any quota for them, unless it could be said that a quota is established by holding club licenses in status quo and, under such condition, one community be allowed one or two club licenses and another community of like number of population be permitted ten or a dozen of them. By no stretch of our imagination could the title to this act be construed to give notice of legislative intent to bring about the latter of the above-mentioned conditions. Should we hold that "limiting the number of licenses", as its title says, was the legislative intent, then, as we have said, so far as clubs are concerned, the legislature absolutely failed to give expression to their intent in the words of this act and, consequently, club licenses could not be affected by the act. On the other hand, should we hold that by reason of the last sentence in section 2 of the act club licenses are forever, or for that matter temporarily, abolished, then unquestionably this act is unconstitutional for the reason that no such purpose is intimated in the title of the act, to say nothing of being "clearly expressed in the title" as the Pennsylvania Constitution directs in article III, sec. 3, which is as follows:

"No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

But if we construe this act to be one limiting the granting of restaurant licenses only, as was said by his Honor Judge Keller of our Superior Court in the case of Kester's Appeal, 140 Pa. Superior Ct. 293, the act is constitutional.

Counsel for the Liquor Control Board urges upon us for our consideration the fact that the 1941 Legislature passed House Bill no. 99, directed to clarifying the situation and dealing with clubs designated as "legitimate purpose clubs". We are mindful of the fact that the club license privilege has been grossly abused in this State and that under it, in the guise of corporations not for profit, licensed places have engaged in the public retail sale of liquor by the subterfuge of having two or more classes of members, which gives to those operating such clubs an unfair advantage over those who hold license and are engaged in the operation of legitimate restaurants for the service of the public. It is our view that this evil could better be eliminated through appropriate legislation governing corporations than through attempting to juggle the license situation to meet it; consequently, we do not feel that the fact that the act was passed and later vetoed by Governor James for reasons which are largely based on the iniquitous condition that grows out of the existence of what are actually fake clubs, usually operated purely for the profit of one or two individuals, could have any particular bearing on the legislative intent in an act that was passed by a preceding legislature—and, in this instance, if it be considered a standard from which a conclusion may be drawn, it would definitely indicate that the intent was not to include "legitimate purpose" clubs.

Some of our contemporaries, in passing upon this act and holding that club licenses fall within the prohibited class, have stressed that portion of the act which

reads, "No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof." In construing the words "of any class", we must bear in mind that there are licenses of different classes available to restaurants and eating houses, and further bear in mind that the very sentence carrying the above words definitely eliminates clubs from what has gone before, when following the above quotation and in the same sentence it is said "exclusive of licenses granted to hotels, as defined in this Act, and clubs", which, to our mind, shows beyond question that the intention of the legislature was to deal with retail licenses to restaurants and eating houses—commercial retail dispensers—sellers. If the use of the words "of any class" drags club licenses in, the later words "exclusive of hotels . . . and clubs" definitely take them out of the operation of the act; therefore, we approach the second sentence with but two classes of licenses subject to its provisions, "liquor and malt or brewed beverages" licenses and "malt or brewed beverages" licenses. The second sentence confronts us with the words "no new licenses except for hotels as defined in this act shall be granted so long as said limitation is exceeded". To our mind, taken in connection with the entire act, it would be just as sound to hold that those words, appearing as they do, would prohibit the issuing of a manufacturing license, which is not even presumed to be the subject of the act, as it is to hold that they prohibit the issuing of a club license.

For the foregoing reasons, this appeal should be sustained, and, therefore, we are entering the following order:

And now, December 30, 1943, it is ordered, adjudged, and decreed that the Pennsylvania Liquor Control Board issue to appellant, Thomas P. Lambert Post No. 2540, Veterans of Foreign Wars of the United States,

2 Storm Street, Stroudsburg, Monroe County, Pa., a club liquor license upon compliance by this appellant with the statutory requirements and any rules and regulations of the board pertinent thereto, the costs of this proceeding to be paid by appellant.